## 77591. FEINBERG v. DURGA.
(377 SE2d 33)

DEEN, Presiding Judge.

Appellee Durga's right foot was run over by the wheel of an automobile operated by appellant Feinberg. Ms. Feinberg had just picked up her younger brother from a Columbus, Georgia, junior high school and was preparing to exit from the school driveway when Durga stepped from the curb and apparently ran into the side of the moving vehicle. The impact knocked him to the ground, and he sustained minor injury to his forehead and left leg, in addition to extensive injuries to the metacarpal bones and other areas of the right foot. The action below ensued.

Both defendant/appellant Feinberg and her brother testified at trial that their car was moving slowly at the time of the accident and that they did not see Durga until just at or just after the moment of impact; Durga testified that he had looked to both left and right before leaving the curb, as was his habit, and had seen no moving cars but had heard a "jack-rabbit start" as he stepped into the driveway. An assistant principal standing in an open breezeway near the driveway testified that he saw Durga, as the latter was stepping off the curb, turn in the direction opposite to that from which the Feinberg automobile would have been visible and wave to another school official with whom he had been talking just prior to the accident. The assistant principal further testified that the Feinberg automobile was traveling at approximately 10 miles per hour and that he had heard no sound like a car "being gunned or floored."

Another witness, a long-time friend and co-worker of Durga's, testified that it was Durga's fixed habit to look both left and right before stepping into a roadway. An investigating officer testified that

there was evidence that someone or something had come in contact with the right front fender of the Feinberg vehicle and had wiped the dust off, but that he had found no evidence, in the form of wiped-off dust or otherwise, of contact on the front or other parts of the car. The officer also testified that, on the basis of the evidence (e.g., no skid marks, the fact that the car had stopped only about 15 feet beyond the point of impact), he would estimate the car's speed at 8-10 miles per hour. Durga, on the other hand, testified that prior to the accident he had seen several vehicles sitting in a stationary position approximately 125 feet distant, and that during the approximately two seconds required for him to take two steps after leaving the curb, the car which struck him had apparently traveled that distance from a "jack-rabbit" start, at a speed of perhaps 50 miles per hour; that this was the only basis on which he could estimate Feinberg's speed because he had not seen the vehicle in motion prior to an instant before the impact; and that at that moment he had seen a headlight "out of the corner of [his] eye." Durga offered no evidence tending to identify the Feinberg automobile as the source of the sounds which he had interpreted as a "jack-rabbit start."

The trial court denied defendant/appellant's motion for directed verdict on the basis that there were genuine issues of material fact requiring jury resolution. The jury found for plaintiff/appellee in the amount of $100,000. Feinberg moved for j.n.o.v. and subsequently for new trial, alleging (1) that Durga's friend's testimony regarding the former's caution upon entering a roadway was inadmissible, and (2) that the trial court had erred in failing to give certain requested jury instructions. Upon denial of the motion for new trial, Feinberg appealed to this court, enumerating as error, in addition to the general grounds (enumerations 3, 4, 5), the denial of her motions for directed verdict and j.n.o.v., alleging that Durga had failed to carry his evidentiary burden (enumerations 1, 2); the denial of the motion for new trial on the basis of the trial court's failure to give jury instructions on the doctrines of sudden appearance and emergency (enumerations 7, 8) and the doctrine of contributory negligence (enumeration 9).

1. We find devoid of merit appellant's seventh, eighth, and ninth enumerations, which contend that the trial court erred in denying the motion for new trial despite having allegedly failed to give certain jury instructions. Examination of the record indicates that the evidence did not authorize instructions on the doctrines of emergency and sudden appearance. *Central of Ga. R. Co. v. Brower*, 106 Ga. App. 340 (127 SE2d 33) (1962). The trial transcript shows that, contrary to appellant's allegation, the court did charge the jury on contributory negligence and, moreover, in conjunction with this instruction, also charged OCGA §§ 40-6-91 (B) and 40-6-92, which deal with the duties of a pedestrian entering a roadway.

2. Appellant contends that appellee failed to carry his evidentiary burden and that the trial court therefore erred in denying her motions for directed verdict and for j.n.o.v. OCGA § 9-11-50 (a) prescribes that, in order for a directed verdict to be mandatory on the trial court, "the evidence . . . shall *demand* a particular verdict." (Emphasis supplied.) Scrutiny of the transcript reveals that appellee carried his evidentiary burden sufficiently to withstand the motion. This enumeration is without merit.

3. In her sixth enumeration appellant alleges that it was error for the trial court to deny the motion for new trial based on the admission of testimony regarding Durga's habit of looking both ways before entering a roadway. The witness, a long-time friend and colleague, testified that he and Durga had regularly left work together for two years, and that in all that time appellee had never once failed to look in both directions before crossing the street that lay between the workplace and the lot where they parked their cars.

Appellant contends that Georgia's rules of evidence prohibit the introduction of evidence of actions or omissions on previous occasions as probative of what occurred on a particular occasion. In *Whidby v. Columbine Carrier*, 182 Ga. App. 638 (356 SE2d 709) (1987), appellants sought to introduce the driving record of the truck driver whose allegedly excessive speed had caused the vehicular collision in which appellants' decedent was killed. This court upheld the trial court's exclusion of this evidence: "[Appellee's] negligence or lack of negligence on this occasion could be proved only by the facts of the event, and not by evidence of his prior driving record or of his general character for carelessness or recklessness in driving. [Cits.] Evidence of defendants' similar acts or omissions on other and different occasions is not admissible. [Cits.] It is not probative of the issue at hand . . ." Id. at 639. Likewise, in *Beal v. Braunecker*, 185 Ga. App. 429 (364 SE2d 308) (1987), we held, at 431, "[O]n the issue of liability . . . the rule remains that proof of defendant's prior driving record or evidence of defendant's similar acts or omissions on other and different occasions is inadmissible." See OCGA § 24-2-2; *Carsten v. Wilkes &c.*, 181 Ga. App. 834 (353 SE2d 922) (1987).

"However, the rule is well established that a witness may testify to his own fixed habits and customs." *Thomas v. Newnan Hosp.*, 185 Ga. App. 764, 768 (365 SE2d 859) (1988). "Although a witness may have no distinct or independent recollection of the details of a fact occurring in the course of the routine of his business, he may testify . . . to his fixed and uniform habit in such cases, and state that he knows that what he did in a given transaction was in accordance with that habit." *Leonard v. Mixon*, 96 Ga. 239 (23 SE 80) (1895). In *Thomas*, this court, citing *Mixon*, supra, held that "the testimony objected to was properly admitted as circumstantial evidence of fixed

and uniform habits rather than of conduct in other transactions, which is neither relevant nor admissible. [Cits.]" Id.

Such testimony may be provided not only by the actor himself, but, in certain circumstances, by others in a position to know his habits. In *Stripling v. Godfrey*, 143 Ga. App. 742 (240 SE2d 145) (1977), appellant assigned error to the admission of evidence concerning a particular habit of the decedent, whose blood alcohol reading, at the time of her death resulting from being struck by a truck on the highway in front of her home, indicated that she was intoxicated. This court held at 742 et seq., "Testimony concerning the decedent's habit of drunkenly stepping in front of approaching vehicles . . . was properly admitted . . . [I]t was relevant to whether she was contributorily negligent. Generally, evidence of a decedent's negligence in previous, isolated instances is not admissible as bearing on negligence at the time of death. [Cit.] Likewise, evidence of negligence in doing certain acts is not admissible when the decedent was not doing those acts at the time of death. [Cit.] And evidence of the decedent's *character* for negligently performing certain acts is not admissible . . . [Cit.] However, evidence of a party's *habitual* carelessness, recklessness, or negligence in performing particular acts would be admissible where death ensued from such acts." In *Carswell v. State*, 171 Ga. App. 455, 460 (320 SE2d 249) (1984), we cited the foregoing passage from *Stripling*, supra, and held: "The probative value of evidence as to such fixed and uniform habits is for the jury . . ."

Scrutiny of the case law indicates that the admissibility of such testimony by persons other than the actor is almost always confined to cases in which the actor has died; otherwise, only the testimony of the actor himself regarding his habit or custom is admissible. See *Stephen W. Brown &c. v. Gowers*, 157 Ga. App. 770 (278 SE2d 653) (1981); *Sams v. Gay*, 161 Ga. App. 31 (288 SE2d 822) (1982). See also *Gulf Refining Co. v. Smith*, 164 Ga. 811, 812 (139 SE 716) (1927); *Farmers' Ginnery & Mfg. Co. v. Thrasher*, 144 Ga. 598, 599 (87 SE 804) (1915); *Burch v. Americus Grocery Co.*, 125 Ga. 153, 159 (53 SE 1008) (1906); *Russell v. Pitts*, 105 Ga. App. 147, 149 (123 SE2d 708) (1961); Agnor, Agnor's Ga. Evidence, (2d ed., 1986), § 10-18, "Habit"; Cleary, McCormick on Evidence, (2d ed., 1976), Ch. 17, "Character and Habit," 188, 189, 195; Green, Ga. Law of Evidence (3d ed.), §§ 67, 68.

In the instant case the issue is plaintiff/appellee's habit *vel non* of looking both ways before entering a roadway — the act which he was doing at the time of his injury. Durga himself testified that it was his fixed habit to look both ways. The challenged witness testified unequivocally that not only on every occasion when he and Durga left work during a two-year period, but consistently on other occasions in and about Columbus and even when they went on vacation together,

"He always looked before he walked, always." In sharp conflict is the testimony of other witnesses, cited supra, regarding the movements of Durga himself and of the vehicles present in the driveway.

In the light of the authorities cited, supra, and after careful consideration of the possible ramifications of a rule that would permit strangers to the action to testify regarding the habits and customs of another, whether or not the actor were dead or otherwise unavailable, we are persuaded that the better rule, in cases where the actor is available, is that stated in *Stephen W. Brown &c. v. Gowers,* supra at 783: "A witness may testify as to his fixed and uniform habit in such cases but not as to the habit and customs of another." Were we to hold otherwise, the trial courts would be thronged by friends, relatives, and colleagues lining up to testify concerning a particular party's habits, and we would think ourselves transported back to the not-so-good old days when the outcome of a case could be decided by the number (and even the rank) of the witnesses each side could produce. In the instant case, for example, what would there be to prevent appellant and her brother — and conceivably a host of others — from swearing that looking before she left the curb, and moving at a nominal speed, was her fixed and immutable habit? Admission of the friend's testimony was error, and we must therefore reverse the judgment below.

4. Having found reversible error, we do not address appellant's enumeration of the general grounds.

*Judgment reversed. Carley, J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED DECEMBER 5, 1988 —
REHEARING DISMISSED DECEMBER 20, 1988.

*Hatcher, Stubbs, Land, Hollis, & Rothschild, William B. Hardegree, Clay D. Land,* for appellant.
*James A. Elkins, Jr.,* for appellee.